**ADMINISTRATOR OF VETERANS AFFAIRS, Appellant,**

v.

**Joyce VALENTINE, Appellee.**

**Nos. 83–250, 83–486.**

District of Columbia Court of Appeals.

Argued Dec. 8, 1983.

Decided April 24, 1985.

Michael J. Ryan, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time brief was filed, Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellant.

Felice Busto, Washington, D.C., with whom Lindsey Bishop Lang, Washington, D.C., was on brief, for appellee.

Before MACK, BELSON and TERRY, Associate Judges.

PER CURIAM:

In *Simpson v. Jack Spicer Real Estate, Inc.*, 396 A.2d 212 (D.C.1978) (per curiam), we held that District of Columbia statutory eviction restrictions[1] did not protect a property owner who defaulted on a mortgage (deed of trust) and continued to live in his former home after it was sold at foreclosure. This case presents the question whether those restrictions protect the *tenant* of a defaulting mortgagor who remains in her previously rented apartment after a foreclosure sale. We hold that they do.[2]

Joyce Valentine rented an apartment in a four-unit building at 3221 Massachusetts Avenue, S.E., in 1977. Her initial 1-year lease expired in 1978, but she continued to live in the apartment and paid rent to successive owners of the building.[3] When a default occurred in the mortgage payments, the lender foreclosed and purchased the property at public auction in May 1982. In June 1982, the lender conveyed the property to the Veterans Administration (VA), which had insured the mortgage.

On October 22, 1982, Valentine received a 30-day notice to quit from the VA. The letter stated, "It is necessary that we obtain possession of this property immediately in order that we may take steps to dispose of the property with the least delay."[4] When Valentine failed to vacate the premises, the VA filed a complaint for possession in D.C. Superior Court. The trial court granted Valentine's motion to dismiss on the ground that the VA had failed to allege any of the reasons recognized in the Rental Housing Act, D.C.Code § 45–1561 (1981), as valid grounds for eviction.

In its appeal of that dismissal, the VA contends that evictions of tenants holding under a defaulting mortgagor are governed by D.C.Code §§ 45–222 and 45–1403 (1981), statutes which have long been in force in the District. Section 45–222 provides, in pertinent part:

> [I]n case of a sale of real estate under mortgage or deed of trust or execution, and a conveyance thereof to the purchas-

---

1. The restrictions construed in *Simpson*, 396 A.2d 212, had been enacted by the Rental Accommodations Act of 1975 and codified at D.C. Code §§ 45–1653, –1661 (Supp.1978). Restrictions that were substantially the same—insofar as relevant to this opinion—were re-enacted in the Rental Housing Act of 1981 and codified at D.C.Code § 45–1561 (1981).

2. During the pendency of this appeal, a fire occurred in the apartment which is the subject of the appeal. Neither party has suggested that the case is moot on that account. Accordingly, we do not address the issue of mootness or any other issue related to the effect of the fire.

3. At the time of the foreclosure Valentine had been withholding rent payments because of alleged housing code violations. Neither party argues that her withholding affects our decision, nor do we find that it does.

4. The receipt of the letter and its contents are uncontroverted. It appears in the record in Valentine's Memorandum of Points and Authorities in support of her motion to dismiss, R. 14. The VA does not dispute it.

er, the grantor in such mortgage or deed of trust, execution defendant, *or those in possession claiming under him,* shall be held and construed to be tenants at will.... (Emphasis supplied.)

Thus, the VA argues, upon a forced sale, the defaulting mortgagor or any tenant renting the premises from him, is deemed a tenant at will. Section 45–1403 provides that a tenancy at will may be terminated merely by the giving of 30 days' written notice.

The more recently enacted Rental Housing Act, however, severely restricts a landlord's authority to evict tenants. D.C.Code § 45–1561(a) provides, in part:

Except as provided in this section, no tenant shall be evicted from a rental unit, notwithstanding the expiration of his or her lease or rental agreement, so long as he or she continues to pay the rent to which the landlord is entitled for such rental unit. No tenant shall be evicted from a rental unit for any reason other than for nonpayment of rent unless he or she has been served with a written notice to vacate which meets the requirements of this section.

The other subsections of § 45–1561 enumerate the grounds upon which a landlord may recover possession of a rental unit. They include: violation by the tenant of an obligation of his tenancy; performance of an illegal act by the tenant within the rental unit; a good faith intention by the landlord to use the premises for his own personal use as a dwelling; and a good faith written contract by the landlord to sell the unit for the personal use of the purchaser as a dwelling, but only after the tenant has been given notice and an opportunity to purchase it himself. In addition, § 45–1561 imposes restrictions on displacement of tenants for the purpose of rehabilitating or demolishing the housing accommodation.

The VA does not argue that its attempt to evict Valentine is based on any of the reasons permitted by § 45–1561; rather, it contends that § 45–1561 does not apply in the situation before us. In expressing the reasons for our rejection of the VA's position, we observe first that the Rental Housing Commission, the administrative agency charged with responsibility for interpreting and applying Chapter 15 (Rent Control) of Title 45 of the District of Columbia Code, including § 45–1561, has ruled that foreclosure of a mortgage does not deprive the mortgagor's tenants of the protection of § 45–1561. *Ficke v. Washington Federal Savings and Loan Ass'n,* No. T.P. 11,062/NV 14, 621 (May 4, 1984). "In reviewing the construction of a statute by the agency charged with its interpretation and enforcement, the agency's interpretation is controlling unless it is plainly erroneous or inconsistent with the statute." *Totz v. Rental Accommodations Commission,* 412 A.2d 44, 46 (D.C.1980) (citation omitted). For the reasons we develop below, we think that the Commission's interpretation, entirely apart from the deference it is owed, is correct.

In support of its position, the VA relies heavily on our decision in *Simpson v. Jack Spicer Real Estate, Inc.,* 396 A.2d 212. Simpson, a homeowner who had defaulted on his mortgage, resisted the subsequent purchaser's efforts to evict him by claiming that he was a tenant at will under the predecessor to D.C.Code § 45–222. Since he was thus a "tenant," Simpson claimed, he could be evicted only for one of the reasons enumerated in the predecessor to § 45–1561.

We rejected that argument, stating:

The primary fallacy in [Simpson's] position is his contention that the statutes are *in pari materia* and that the term "tenant" is defined consistently throughout the D.C.Code. The distinction here is between a tenant at common law—one who holds or possesses lands by any kind of right or title—and a tenant under the renters' statute—one who stands in a contractual relationship with his landlord. *See Surratt v. Real Estate Exchange, Inc.,* D.C.Mun.App., 76 A.2d 587, 588 (1950).... We conclude that the tenancy arising from mere possession is

not that which is referred to in the rent control statute and reject [Simpson's] contentions to the contrary.

*Simpson*, 396 A.2d at 214–15.

The VA asserts that because tenants holding under defaulting mortgagors are placed in the same category as defaulting mortgagors in § 45–222, and because we held that defaulting mortgagors are not protected by (the predecessor to) § 45–1561, it follows that those tenants are likewise unprotected by § 45–1561. The VA also argues, relying upon some of the language quoted above, that Valentine cannot claim the protection of § 45–1561 because there is no contractual relationship between her and the VA.

The VA has succumbed to the same fallacy that Simpson did. It asks us to apply rigidly a classification rooted in another statute to the situation before us without considering whom § 45–1561 was designed to protect. We decline to take such an inflexible approach and conclude that a proper construction of § 45–1561 requires distinguishing between defaulting mortgagors and tenants of defaulting mortgagors.

Initially, we note that in *Surratt v. Real Estate Exchange*, 76 A.2d at 588, cited in *Simpson*, this court stated that it was "obvious" that persons who had been renting from a defaulting mortgagor were in a different situation from the mortgagor himself for purposes of statutory eviction controls. *Surratt* involved basically the same fact situation as in *Simpson* and the court came to the same conclusion. However, the court was careful to distinguish several cases that had held that eviction controls similar to those in § 45–1561 were applicable in an action by a post-foreclosure purchaser to obtain possession from tenants of the defaulting mortgagor. *See, e.g., Long Branch Banking Co. v. How-*

*land*, 133 N.J.Eq. 315, 32 A.2d 860 (N.J.Ch. 1943) (eviction restrictions apply even though technically there was no landlord-tenant relationship between post-foreclosure purchaser and tenant of former owner).

An examination of the Rental Housing Act confirms the validity of the distinction we drew in *Surratt.* One of the purposes of the Act is "[t]o protect the existing supply of rental housing from conversion to other uses." D.C.Code § 45–1502(4) (1981). Before the foreclosure, Valentine's apartment clearly was part of the existing supply of rental housing in the District; to allow the VA to evict her would have opened the way to conversion of that building to other uses. In *Simpson*, on the other hand, the property had not been part of the District's rental housing stock, so permitting the former owner's eviction did not diminish the supply of rental units.

▪ Moreover, the eviction restrictions of § 45–1561 are only part of a comprehensive legislative scheme to protect the rights of tenants and therefore must be construed liberally. *See McCree v. McCree*, 464 A.2d 922, 927–28 (D.C.1983) (remedial statute construed liberally to effectuate its purposes); *Hutchison Brothers Excavation Co. v. District of Columbia*, 278 A.2d 318, 321 (D.C.1971).[5] To the same end, present law in the District imposes rent ceilings on most apartments in buildings of more than four units. D.C.Code §§ 45–1516, –1517 (1981 & Supp.1984).[6] It also limits the conversion of rental accommodations to condominiums or cooperatives. *Id.* §§ 45–1601, *et seq.*

▪ The salient provision here, subsection (a) of § 45–1561, prohibits eviction in most cases even though the lease or agreement has expired "so long as [the tenant] continues to pay the rent to which the

---

**5.** *See also* D.C.Code §§ 45–1655 (1981) and 45–1661 (Supp.1984) (Rental Housing Conversion and Sale Act) ("[t]he purposes of this chapter favor resolution of ambiguity by the hearing officer or a court toward the end of strengthening the legal rights of tenants or tenant organi-

zations to the maximum extent possible under law").

**6.** Government-subsidized and newly constructed accommodations, among others, are exempted from the controls. *Id.* § 45–1516(a).

landlord is entitled for such rental unit." The VA seeks to avoid application of this provision by disclaiming entitlement to rent from Valentine because of the lack of a contractual relationship. We might agree in other circumstances that application of the phrase "the rent to which the landlord is entitled" would be problematic. However, in the context of the District's rent control statutes, it seems apparent that, in a case such as this, it is intended to refer to the money payable for use and occupancy of the particular unit after foreclosure.

The VA also argues that under the definitions set forth in § 45–1503 the VA is not a landlord, Valentine is not a tenant, and the premises are not a rental unit. Once more, consideration of the entire statute leads to rejection of VA's argument. For purposes of the chapter that includes § 45–1561, "tenant" is defined to include "a tenant, subtenant, lessee, sublessee, or other person entitled to the possession, occupancy, or the benefits thereof of any rental unit owned by another person." D.C.Code § 45–1503(30) (1981). "Landlord" is defined to mean "an owner, lessor, sublessor, assignee, any agent thereof, or any other person receiving or entitled to receive rents or benefits for the use or occupancy of any rental unit within a housing accommodation within the District of Columbia." *Id.* § 45–1503(12). And a "rental unit" means "any part of a housing accommodation ... which is rented or offered for rent for residential occupancy." *Id.* § 45–1503(27).

These definitions cannot be read in isolation from the rest of the statute. Whether one party is entitled to the possession of a rental unit or whether another party is entitled to receive rent for the use of that unit depends on other provisions of D.C. law, *including § 45–1561.* That this must be so may be seen by considering the position of a tenant whose lease has expired and whose landlord has served notice to vacate. In the absence of a provision such as § 45–1561, the tenant would not be entitled to the continued possession of the apartment, nor would the landlord be entitled to rent for the period following expiration of the notice to vacate.[7] Yet there can be no doubt that § 45–1561 prohibits the landlord from evicting a tenant in such a situation. The statute plainly states: "Except as provided in this section, no tenant shall be evicted from a rental unit, *notwithstanding the expiration of his or her lease or rental agreement,* so long as he or she continues to pay the rent to which the landlord is entitled for such rental unit." *Id.* § 45–1561(a) (emphasis added). The obvious import of this language led us to declare an owner's attempt to evict a tenant based on the expiration of the lease a "prima facie violation" of a prior regulation containing essentially this same provision. *Jack Spicer Real Estate, Inc. v. Gassaway,* 353 A.2d 288, 290 n. 5 (D.C. 1976).[8]

■ We think it clear, then, that in the context of § 45–1561 "landlord," "tenant" and "rental unit" are not to be understood

---

**7.** Our decision in *Nicholas v. Howard,* 459 A.2d 1039 (D.C.1983) (per curiam), on which the VA also relies, reflected this understanding. There, tenants of a former owner of a town house held over when the building was purchased. After efforts to negotiate a lease with the tenants were unsuccessful, the new owner brought action for possession and succeeded in evicting them. The only question before this court was whether the new owner, in the same summary action in the Landlord & Tenant Branch, could collect a money judgment for rent arrearages for the period between the purchase of the building and the eviction. We held that the owner could not because there was no contractual landlord-tenant relationship that obligated the former tenants to pay the new owner "rent." We noted,

however, that the owner could have brought a damages claim for the value of the use and occupancy of the property, either in a traditional civil action in ejectment or as a separate damages action. *Id.* at 1041 & n. 1.

Nowhere in *Nicholas* did we consider the application of § 45–1561; eviction had already been accomplished and was not challenged in the appeal before this court.

**8.** The regulation, D.C. Rent Control Regulation No. 74–20, § 10, is reprinted in *Gassaway,* 353 A.2d at 290 n. 3. In that case we also upheld the constitutionality of the regulation and held that it superseded prior law to the contrary. *Id.* at 291–92.

solely according to the technical precepts of real property law.  Rather, we think they must be interpreted by reference also to their more ordinary usage and the purposes of the statute.  Section 45–1561 evinces an intent to protect from evictions persons who *have been renting* apartments and who continue to pay the rent.  Appellee Valentine, we think, is such a person, having rented the same apartment continuously since 1977.  Simpson, on the other hand, had been a homeowner until he defaulted on his mortgage; he had never rented the premises that were the subject of the foreclosure.  *Simpson,* 396 A.2d at 213.

▋▋  Another clear indication that § 45–1561 applies to the case at hand is found in subsection (e) of that section which states:

A landlord may recover possession of a rental unit where he or she has in good faith contracted in writing to sell the rental unit or the housing accommodation in which such unit is located for the immediate and personal use and occupancy by another person, so long as, at the time the owner offers the rental unit or housing accommodation for sale, the landlord has so notified the tenant in writing and extended to the tenant an opportunity to purchase as provided in Chapter 16 of this title.  The landlord shall serve on the tenant a 90-day notice to vacate in advance of his or her action to recover possession of the rental unit.  No person shall demand or receive rent for any rental unit which has been repossessed under this subsection during the 12-month period beginning on the date on which the rental unit was originally repossessed by the landlord.

The VA in this case candidly concedes that the reason it seeks to evict Valentine is to facilitate prompt resale of the property.

By clear implication, however, subsection (e) prohibits evictions in contemplation of sale except where the owner has a written contract to sell the housing accommodation to a purchaser who intends to occupy the premises immediately for his own personal use.  Even then, the owner must first have offered the tenant an opportunity to purchase the property himself.

▋▋  The VA has offered no persuasive reason why a party who has come into ownership as a result of a mortgage default has any different relationship with previous tenants than do other owners.[9]  While it may be that the restrictions imposed by § 45–1561 tend to depress the value of the property, the same would be true of any residential rental building in Washington.

For the foregoing reasons, we hold that D.C.Code § 45–1561 applies to the VA's attempt to evict Valentine and that it in this situation supersedes the earlier enacted §§ 45–222 and 45–1403.  *See Jack Spicer Real Estate, Inc. v. Gassaway,* 353 A.2d at 291–92.

*Affirmed.*

TERRY, Associate Judge, dissenting:

With all respect, I cannot join my colleagues in judicially repealing a statute that has been on the books since 1901.  By holding that D.C.Code § 45–1561 (1981) gives appellee the right to remain in possession of the apartment at issue, the majority is reading D.C.Code § 45–222 (1981) right out of the Code.  I am not willing to do this; therefore I dissent.

Section 45–222 provides:

An estate at will is one held by the joint will of lessor and lessee, and which may be terminated at any time, as herein elsewhere provided, by either party; and

---

**9.**  Nor has the VA advanced any substantial reason why it should be treated differently from other owners in its position.  The VA argues that its general practice is not to act as landlord but rather to sell properties like this one and return the money to its Loan Guaranty Revolving Fund.  However, § 45–1561 does not require the VA to serve as landlord against its will; it simply prohibits evicting persons who had been renting from the former owner in order to facilitate the sale of the premises unless it has complied with the provisions of that section.

such estate shall not exist or be created except by express contract: Provided, however, that in case of a sale of real estate under mortgage or deed of trust or execution, and a conveyance thereof to the purchaser, the grantor in such mortgage or deed of trust, execution defendant, or those in possession claiming under him, shall be held and construed to be tenants at will, except in the case of a tenant holding under an unexpired lease for years, in writing, antedating the mortgage or deed of trust.

Twice this court has held, construing section 45–222,[1] that the eviction safeguards under previous rent acts did not apply "where the occupant of premises was the person whose mortgage or deed of trust had been foreclosed...." *Surratt v. Real Estate Exchange, Inc.*, 76 A.2d 587, 588 (D.C.1950); *accord, Simpson v. Jack Spicer Real Estate, Inc.*, 396 A.2d 212, 214–215 (D.C.1978). I believe that these precedents control the instant case and require us to reverse the trial court's dismissal of the VA's complaint for possession.

Appellee Valentine, of course, is the former tenant of a mortgagor who defaulted on his loan, not the defaulting mortgagor himself. But that is no reason to exclude her from the operation of section 45–222. The proviso in that section applies not only to a defaulting mortgagor but to "those in possession claiming under him." That these words include lessees of the mortgagor is clear from the exception which section 45–222 makes for "a tenant holding under an unexpired lease for years, in writing, antedating the mortgage or deed of trust." If lessees of a defaulting mortgagor were not persons "claiming under him," there would be no need for this exception. Valentine does not fall within the exception, and thus she must be included

within the general language of the proviso, which makes her a tenant at will.[2] As a tenant at will, she is entitled to only thirty days' notice under D.C.Code § 45–1403 (1981).

Appellee argues that section 45–222 has been "superseded" by the provisions of the Rental Housing Act of 1980,[3] of which section 45–1561 is a part. This is but another way of saying that the later statute repealed the earlier one by implication. I cannot accept such an argument. "It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible." *United States v. Borden Co.*, 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939) (citations omitted). "The courts are not at liberty to pick and choose among [legislative] enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed [legislative] intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). I believe it is possible to give effect to both section 45–222 and section 45–1561 by recognizing the former as a pre-existing law which the City Council allowed to stand unchanged when it enacted the Rental Housing Act of 1980.

We are dealing here with a prior statute of limited application and a later statute of broad general scope. The proviso in section 45–222 deals only with the particular situation of a person in possession of property holding over after a foreclosure and sale, whereas the Rental Housing Act is an attempt by the City Council to cover the waterfront in regulating the rental housing market in the District of Columbia. In such a situation a presumption arises that

1. The present section 45–222 was codified in previous editions of the Code as section 45–822. The language, however, has remained unchanged since it was enacted in 1901.

2. I would hold that she became a tenant at will by operation of law, as of the date on which title

to the property passed to the purchaser after the foreclosure sale. The fact that the purchaser was also the foreclosing lender is immaterial to Valentine's status.

3. D.C.Law 3–131, 28 D.C.Reg. 326 (1981).

the legislature knowingly allowed the earlier enactment to stand as an exception to the later one:

> [T]he legislature is presumed to have known of the existence of prior special or particular legislation, and to have contemplated only a general treatment of the subject matter by the general enactment. Therefore, where the later general statute does not present an irreconcilable conflict, the prior special statute will be construed as remaining in effect as a qualification of or exception to the general law.

1A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 23.15 (4th ed.1972) (footnotes omitted); *see, e.g., Goodwin v. District of Columbia Board of Education,* 343 A.2d 63, 65–66 (D.C.1975).

Although there is no legislative history or other evidence of legislative intent regarding the continuing validity of section 45–222, there is indirect evidence that the City Council did not intend it to be superseded by the Rental Housing Act. D.C. Code § 45–1661 (1984 Supp.) provides:

> The purposes of this chapter favor resolution of ambiguity by the hearing officer or a court toward the end of strengthening the legal rights of tenants or tenant organizations to the maximum extent permissible under law. If this chapter conflicts with another provision of law of general applicability, the provisions of this chapter control.

Appellee relies on this section as a statement of legislative intent to nullify section 45–222 when it appears to conflict with the later-enacted section 45–1561. In fact, however, section 45–1661 supports the contrary argument of appellant. The reference to "this chapter" in section 45–1661 is to the Rental Housing Conversion and Sale

Act of 1980,[4] not the Rental Housing Act of 1980. Section 45–1561 is not a part of "this chapter." [5] Because these two statutes— the Rental Housing Act and the Rental Housing Conversion and Sale Act—were enacted at almost the same time, I can only conclude that the City Council made a conscious choice to omit from the Rental Housing Act a section comparable to the "Statutory Construction" section of the Conversion and Sale Act, *i.e.,* section 45–1661. The absence of such a provision from the Rental Housing Act, when it would have been a simple matter to include it, convinces me that the Council did not intend section 45–1561 to supersede or override section 45–222.

I would therefore hold that section 45–222 must be given effect as a pre-existing exception to section 45–1561, following established principles of statutory construction, and that under section 45–222 appellee Valentine became a tenant at will when the foreclosure sale resulted in a transfer of title to the purchaser. Consequently, she is entitled under section 45–1403 to only thirty days' notice before being evicted.

The decision of the majority in this case will have an immediate impact on banks and other lending institutions in the District of Columbia. It will turn any foreclosing lender who acquires title to property that happens to have a residential tenant into an unwitting—and often unwilling— landlord, subject to the stringencies of the Rental Housing Act. The result could very well be a drying up of available mortgage funds for the purchase of rental properties in the District. I cannot believe that this was the intent of the City Council when it enacted the Rental Housing Act. Since my colleagues disagree, the only recourse of

---

4. D.C.Law 3–86, 27 D.C.Reg. 2975 (1980).

5. For this reason the majority's reliance on the Rental Housing Commission's decision in *Ficke v. Washington Federal Savings & Loan Ass'n,* No. T.P. 11,062 (May 4, 1984), is ill-advised. The *Ficke* opinion is based primarily on D.C. Code § 45–1661, which sets forth a rule of statutory construction applicable only to "this chapter." The Commission not only ignores or overlooks the fact that "this chapter" does not include section 45–1561, but also erroneously asserts that section 45–1661 is part of the Rental Housing Act of 1980 when in fact it is not. Thus *Ficke* is of little or no value as precedent; it demonstrates merely that the Commission has misread the District of Columbia Code.

the lending institutions is to seek corrective legislation from the Council, clarifying the status of lessees in possession of foreclosed property and the rights and duties of foreclosing lenders.