Mae GRAHAM, et al., Appellants,

v.

Howard BERNSTEIN and Maxine Bernstein, t/a H & M Enterprises, Appellees.

No. 86–171.

District of Columbia Court of Appeals.

Argued May 12, 1987.

Decided June 18, 1987.

John K. Lunsford, Washington, D.C., for appellants.

Daniel B. Haslam, III, Washington, D.C., for appellees.

Before NEWMAN, TERRY, and STEADMAN, Associate Judges.

TERRY, Associate Judge:

Appellants are tenants of an apartment building on Harvard Street, N.W., owned by Howard and Maxine Bernstein. Because they were losing money on the building, the Bernsteins decided to evict the tenants and remove the building from the rental housing market. When the tenants resisted eviction, the landlords sued each tenant in the Superior Court to gain possession of his or her apartment. After the cases were consolidated, the landlords prevailed in every case but one, in which judgment was entered for the tenant. We hold that the landlords improperly served the notices to vacate, and that the trial court's judgment in each case before us must therefore be reversed.

## I

The tenants have been at odds with the landlords ever since 1980, when the landlords sought to increase the rent by filing a hardship petition with the District of Columbia Rental Accommodations Office (RAO). The RAO disallowed several of the expenses claimed by the landlords, mainly because they were not supported by documentation or otherwise verified. In addition, the RAO found that the property was earning more than an eight percent rate of return, the maximum allowable under D.C. Code § 45–1693(a) (1980 Supp.). The hardship petition was accordingly denied. When the tenants returned to the RAO requesting a rent decrease, their request was granted on November 4, 1982.[1]

---

1. The RAO's decision to decrease the rents was affirmed by the Rent Administrator in October 1983, whereupon the landlords sought review in this court. When the tape recording of the hearing before the Rent Administrator was found to be inaudible, this court remanded the case to the Rent Administrator for a new hearing. *Bernstein v. District of Columbia Rental*

Several tenants then started paying rent at the levels specified by the RAO, and the landlords responded by suing these tenants for possession of their rental units based on non-payment of rent. In addition, the landlords sent the tenants 180–day notices to vacate, intending to discontinue the building's use for rental housing. *See* D.C. Code § 45–1561(i)(1)(A) (1981). All of the 180–day notices were served by first-class mail, but by no other means. After 180 days had passed, the landlords moved to amend their original complaints to reflect that the notices to vacate had expired, providing an additional ground for eviction.

Both sides filed motions for partial summary judgment, in which the only issue was whether first-class mailing of the 180–day notices to vacate was an adequate method of service. The court ruled orally on these motions, and there is no transcript of the proceedings. It is clear from the record, however, that the tenants' motion was denied.

The case then proceeded to trial before another judge, who ruled in favor of the landlords on all but one of their claims for possession. The losing tenants assign several errors to the rulings of both the motions judge and the trial judge. We agree with the tenants that the landlords' service of the 180–day notices to vacate by first-class mail was invalid, and accordingly we reverse the judgment of the trial court. Our reversal on this ground makes all the other assignments of error moot.

## II

The District of Columbia Code clearly states the procedures to be followed in serving a notice to quit. At the time the notices were served in this case, D.C.Code § 45–1406 (1981) provided:

> *Every notice to the tenant to quit* shall be served upon him personally, if he can be found, and if he cannot be found it shall be sufficient service of said notice to deliver the same to some person of proper age upon the premises, and in the absence of such tenant or person to post the same in some conspicuous place upon the leased premises. [Emphasis added.][2]

As this statute makes plain, there is a strong preference for personal service of the notice to quit (or vacate).[3] If personal service on the tenant is not possible, a "person of proper age upon the premises" may be personally served instead; substituted service by posting, however, should be used only as a last resort. *Moody v. Winchester Management Corp.,* 321 A.2d 562, 564 (D.C.1974).

It is not disputed that the notices to quit in this case were served only by first-class mail. The landlords maintain nevertheless that this method of service was permissible under D.C.Code § 45–1595 (1981), which provides in pertinent part:

> (a) Unless otherwise provided by Rental Housing Commission regulations, *any information or document* required to be served upon any person shall be served upon that person, or the representative designated by that person or by the law to receive service of such documents. When a party has appeared through a representative of record, service shall be made upon that representa-

---

*Housing Commission,* No. 84–1547 (D.C. January 29, 1986) (unpublished order).

2. Section 45–1406 was originally enacted in 1901. It has been amended only once, in 1984, when the words "in English and Spanish" were inserted after the word "served," and a second sentence was added. It now reads as follows:

Every notice to the tenant to quit shall be served in English and Spanish upon him personally, if he can be found, and if he cannot be found it shall be sufficient service of said notice to deliver the same to some person of proper age upon the premises, and in the absence of such tenant or person to post the same in some conspicuous place upon the

leased premises. If the notice is posted on the premises, a copy of the notice shall be mailed first class U.S. mail, postage prepaid, to the premises sought to be recovered, in the name of the person known to be in possession of the premises, or if unknown, in the name of the person occupying the premises, within three calendar days of the date of posting.

D.C.Code § 45–1406 (1986).

3. The courts have consistently used the terms "notice to quit" and "notice to vacate" interchangeably. *See, e.g., Jones v. Brawner Co.,* 435 A.2d 54, 56 n. 6 (D.C.1981) (describing a "notice to vacate" under section 45–1561 as a "notice to quit").

tive. Service upon a person may be completed by any of the following ways:

\* \* \* \* \* \*

(3) *By mail,* or deposit with the United States Postal Service properly stamped and addressed.... [Emphasis added.]

The landlords contend that a notice to quit is encompassed by the phrase "any information or document required to be served," and hence that service of the notices in this case by first-class mail was sufficient. This court must therefore determine which statute controls: section 45–1406, which does not authorize service of a notice to quit by mail, or section 45–1595, which permits service by mail on any occasion unless a regulation prohibits it.

As it happens, we have already decided that very question. In *Jones v. Brawner Co.,* 435 A.2d 54 (D.C.1981), a landlord delivered a notice to cure a lease violation, and later delivered a notice to quit for failure to cure the violation. Both notices were slipped under the tenant's door. We held that this method of serving a notice to quit was insufficient under D.C.Code § 45–906 (1973) (recodified as D.C.Code § 45–1406 (1981)), although it was arguably permissible under D.C.Code § 45–1699.26 (1980 Supp.) (recodified as D.C.Code § 45–1595 (1981)) and its implementing regulations. *Id.* at 55 & n. 5. The court in *Jones* concluded that the former statute was controlling, and held that the landlord had no right to possession. We flatly refused to apply section 45–1699.26 (now section 45–1595) to notices to quit because " 'Every notice to quit' must be served according to the requirements contained in § 45–906 [now section 45–1406]." *Id.* at 56.

Despite the *Jones* case, the landlords insist that the stricter provisions of section 45–1406 do not apply here. They assert that section 45–1595, enacted as part of the Rental Housing Act of 1980, supplants section 45–1406, which was not included in the 1980 Act. More fully stated, their argument is that because the 180–day notice to vacate was first required by the 1980 Act—specifically, by D.C.Code § 45–1561(i)(1)(A) (1981), which is part of the 1980 Act—service of such a notice is governed only by

D.C.Code § 45–1595 (1981), which is also part of the 1980 Act. The landlords rely principally on our decision in *Cooley v. Suitland Parkway Overlook Tenants' Ass'n,* 460 A.2d 574 (D.C.1983). In *Cooley* this court held that the 1980 Act, unlike its 1977 predecessor, did not require a landlord to serve both a notice to cure or vacate and a subsequent notice to quit; if the tenant received the notice to cure or vacate, she was entitled to nothing more. *Id.* at 575. The landlords thus argue by analogy from *Cooley* that the newer provisions of section 45–1595 supersede the previous requirements under section 45–1406.

We reject the landlords' argument because *Cooley* has no bearing on this case. *Cooley* dealt only with the narrow issue of whether a notice to quit must be served in addition to a notice to cure or vacate; we held that the two notices merged into one because the 1980 Act had eliminated the requirement of a second, separate notice. We did not even discuss in *Cooley* whether the service requirements for a notice to quit had been changed by the 1980 Act; that was not an issue in the case because the tenant had been personally served with the notice. *See* 460 A.2d at 575.

This court has held in some circumstances that if two rental housing statutes conflict, the more recently enacted statute controls. In *Jack Spicer Real Estate, Inc. v. Gassaway,* 353 A.2d 288 (D.C. 1976), the court was faced with conflicting statutory requirements for evicting a tenant whose lease had expired. The older statute did not require service of a notice to quit upon the tenant, but the newer statute did. We held, in light of the overall legislative purpose underlying rent control, that the latter requirement prevailed. *Id.* at 291–292; *see also Burns v. Harvey,* 524 A.2d 35, 37 n. 3 (D.C.1987); *Administrator of Veterans Affairs v. Valentine,* 490 A.2d 1165 (D.C.1985). These cases do not apply here, however, because there is no statutory conflict; *Jones* compels us to follow the "clear dictates" of section 45–1406. 435 A.2d at 56.

Furthermore, section 45–1406 is specifically intended to govern the service of notices to quit, whereas section 45–1595 is a more general provision affecting the service of "any information or document." This court has often recognized "the well-settled rule of statutory construction that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms." *Martin v. United States*, 283 A.2d 448, 450–451 (D.C. 1971) (citations omitted). Applied to the case at bar, this "well-settled rule" means that section 45–1406—which specifically deals with service of a notice to quit—is the proper statute to apply here.[4]

Finally, as we have noted, there is no transcript of the hearing on the parties' cross-motions for partial summary judgment, so that we do not know the reasons for the denial of the tenants' motion. Despite this gap in the record, we are convinced that no matter what those reasons were, they were erroneous as a matter of law.[5]

We hold that because the landlords' service of the 180–day notices to vacate was defective, the judgment of possession cannot stand. *See Jamison v. S & H Associates*, 487 A.2d 619, 621 (D.C.1985); *Moody v. Winchester Management Corp., supra*, 321 A.2d at 564.

*Reversed.*

---

4. Even if the 1984 amendment to section 45–1406, *supra* note 2, were applicable to this case, it would not change the result. The 1984 amendment permits service by first-class mail only when the mailing is preceded by posting the notice to quit on the premises. No such posting occurred in this case.

5. If the motions judge based his ruling on the alleged waiver by the tenants of their right to a notice to vacate, he was in error. D.C.Code § 45–1561(a) (1981) clearly states that a tenant may not be evicted "for any reason other than for nonpayment of rent" without first being served with a notice to vacate, which must also be served on the Rent Administrator. Although the landlords claimed that the tenants had not paid their rent in full, the expiration of the 180–day notices to vacate was alleged to be an independent ground for eviction. Valid service of those notices was therefore essential to the landlords' case.

Alternatively, the motions judge may have concluded that the tenants had actually received the notices to quit, and that actual receipt cured any defects in the method of service. This court has held, however, that "evidence of actual receipt is ineffective to fulfill the requirements of [section 45–1406]." *Jones v. Brawner Co., supra*, 435 A.2d at 56, citing *Moody, supra*, 321 A.2d at 564. Unless there is a judicial admission that the notices were received, which did not occur here, the statutory requirements must be met before an eviction may take place. *Jones, supra*, 435 A.2d at 56.