Joyce **VALENTINE,** Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 87–3289.**

United States District Court,
District of Columbia.

Feb. 27, 1989.

---

Lindsey Bishop Lang, H. Clay Smith, III, Steptoe & Johnson, Washington, D.C., for plaintiff.

Richard N. Reback, Asst. U.S. Atty., Washington, D.C., for defendant.

## OPINION AND ORDER

REVERCOMB, District Judge.

Plaintiff sues under the Federal Tort Claims Act for destruction of her personal property by a fire in her apartment, owned by the United States Veterans Administration ("VA") after the previous owner defaulted on its mortgage. The Court heard argument on December 22, 1988, on plaintiff's motion for partial summary judgment and defendant's motion for plenary summary judgment. In this opinion and order, the Court grants in part and denies in part plaintiff's motion and denies defendant's motion.

*Facts*

The essential facts in this case are not in dispute. Plaintiff, Ms. Valentine, lived in an apartment at 3221 Massachusetts Avenue, S.E., in Washington, D.C., from 1977 through March 31, 1984. After the owner defaulted on the mortgage on the building in 1982, the lender conveyed the title to the VA, which had insured the mortgage. Three of the four tenants of the building vacated their units at the VA's request, but Ms. Valentine refused, even after receiving a 30–day notice to quit from the VA on October 22, 1982. When Ms. Valentine refused to leave the apartment, the VA filed an eviction complaint, which was dismissed by the Superior Court of the District of Columbia on Ms. Valentine's motion on January 28, 1983. At about the same time, the District's housing department notified the VA that it was in violation of the District of Columbia housing code for failure to heat the apartment building and ordered the VA to comply with the code. The VA did not, however, provide heat to the building.

The VA did appeal the decision of the Superior Court to the District of Columbia Court of Appeals, which heard argument on December 8, 1983, and affirmed the Superior Court in a decision dated April 24, 1985. Meanwhile, Ms. Valentine states that she heated her apartment by using a space heater. On March 31, 1984, the space heater ignited some bedding in the apartment, causing a fire. Ms. Valentine alleges that all of her personal property was destroyed. She then commenced this suit to recover damages for her personal property and emotional distress.

*Defendant's Duties Under District of Columbia Law*

When an owner by foreclosure of residential property in the District of Columbia fails in an attempt to evict a tenant, does the owner then have an obligation to heat the tenant's apartment, even though there is no contract between the two? The Court concludes that it does.

The District of Columbia has enacted extraordinary statutes to protect tenants and provide them with rights beyond the terms of their contracts with their landlords. These statutes are designed to change what the District of Columbia government has found to be a severe shortage of affordable housing in the District. *See* D.C. Code Ann. § 45–2501 (1986). One of these rights is the right not to be evicted from an apartment, even if the tenant's lease has expired, except under a few conditions.[1] D.C.Code Ann. § 45–1561(a) (1981) (now replaced by the substantially similar § 45–2551 (1986)). Indeed, the VA failed in an attempt to evict Ms. Valentine from her apartment after the VA became the owner of the apartment building. *Administrator of Veterans Affairs v. Valentine*, 490 A.2d

1165, 1166 (1985). In that case, the District of Columbia Court of Appeals held that because of § 45–1561, Ms. Valentine could not be evicted from her apartment, despite the fact that the VA took ownership to the property after the original owner defaulted.[2]

A question not clearly answered by the D.C. Court of Appeals, once Ms. Valentine was not evicted, was whether the rationale behind the decision meant that the VA was obligated to act as a landlord—including providing her with adequate heat, as required by the D.C. Housing Code. *See* 5G DCRR §§ 1201, 2407 (1982) (now codified at D.C.Mun.Regs. tit. 14, §§ 500, 501 (1986)). The D.C. Court of Appeals addressed this question only by noting in a footnote that "§ 45–1561 does not require the VA to serve as landlord against its will; it simply prohibits evicting persons...." *Valentine*, 490 A.2d at 1170 n. 9. Although defendant in the instant case cites this as conclusive law, it is noteworthy that the Court did not state that "the VA does not have to serve as a landlord," but only that the anti-eviction statute did not require it. The question was further complicated by Judge Terry's dissent, which said that the majority opinion "will turn any foreclosing lender who acquires title to property ... into an unwitting—and often unwilling—landlord, subject to the stringencies of the ... Housing Act." *Id.* at 1172 (Terry, J., dissenting).

The instant Court is then faced with a dilemma. The first choice would be to read the *Valentine* case narrowly, holding that just because a tenant cannot be evicted does not mean that the owner is obliged to provide heat. While this solution would provide the VA with the traditional protec-

---

**1.** A tenant who pays rent to a landlord entitled to receive rent may be evicted only for nonpayment of her rent, violation of other terms of the lease, and few other reasons, even if her lease has expired. D.C.Code Ann. § 45–1561 (1981) (now replaced by the substantially similar § 45–2551 (1986)).

**2.** The VA attempted to evict Ms. Valentine with the argument that she was a "tenant at will"—an argument the court rejected. *See Valentine*, 490 A.2d at 1170; *see also infra* footnote 3. Ms. Valentine was withholding rent at the time of

the foreclosure because of alleged housing code violations and she apparently did not pay rent after the VA took title to the property. Nonetheless, defendant does not allege that this withholding should affect the Court's decision, just as it did not affect the decision in *Valentine*, 490 A.2d at 1166 n. 3. Had Ms. Valentine refused to pay her rent for no acceptable reason, she presumably could have been evicted, pursuant to D.C.Code Ann. § 45–1561 (1981) (now replaced by the substantially similar § 45–2551 (1986)).

tion that no one is forced to become a landlord against his will,[3] it could also effectively eviscerate the anti-eviction law. Under a scheme in which an owner by foreclosure owes no *duty* to the resident—as is argued by defendant—an owner such as the VA could cut off the heat, electricity, gas, and water to a unit and still comply with law.[4] The owner could even take steps in an intentional effort to "constructively" evict the resident from her unit. Indeed, in the instant case an official of the VA admitted that one of the reasons for the VA's failure to provide heat was the hope that the lack of heat would encourage Ms. Valentine to abandon her apartment. See Deposition of Herbert Fenster at 55. The Court believes that such a solution cannot co-exist with the strong anti-eviction policy of D.C.Code Ann. § 45–1561 (1981) (now replaced by the similar D.C.Code Ann. § 45–2551 (1986)).

■ The second alternative is to read § 45–1561 and the D.C. Court of Appeals' decision in *Valentine* as requiring that an owner who cannot or does not evict a resident provide heat to that resident. This policy also has its problems. In addition to going beyond the apparent contemplation of the D.C. Court of Appeals in *Valentine*,[5] it could create a tremendous disincentive to those, such as the VA, who would lend funds or guarantee mortgages for the purchase of rental properties.[6] However, it often is true that laws designed to protect consumers in their business transactions—

such as usury laws—may end up decreasing the number of times that businesses are willing to enter into these transactions at all. However, because the policy decision to adopt § 45–1561 was made by the D.C. government, the Courts must give effect to the measure.[7] This Court concludes that the anti-eviction law, as interpreted by the D.C. Court of Appeals, must implicitly be held to have required an owner by foreclosure to provide heat to residents who it does not evict, pursuant to 5G DCRR § 1201, 2407 (1982) (now codified at D.C. Mun. Regs. tit. 14, §§ 500, 501 (1986)). In sum, the Court concludes that the D.C. Court of Appeals, were it to address to issue left unresolved in *Valentine*, would hold that the VA was obligated to provide heat to Ms. Valentine's apartment.

## Coverage of the United States by the District's Housing Laws

■ The other ground raised by defendant for not finding a duty on the part of the VA to heat Ms. Valentine's apartment is that the federal government is not covered by the D.C. Housing Code. The Code imposes obligations on an "owner," who is defined as a "person" who has "legal title" to a building. 5G DCRR § 1102 (1982) (now codified at D.C.Mun.Regs. tit. 14, § 199 (1986)). In turn, a person is defined as "any individual, firm, partnership, corporation, company, or association; and includes any personal representative, trustee, receiver, assignee or other similar representative." *Id.* Because this list does not

---

**3.** *See* D.C.Code Ann. § 45–222 (1986) (adopted in 1901), which states that, in the case of a foreclosure, the tenants become "tenants at will" of the new owner, despite any lease obligations. The D.C. Court of Appeals held that the newer. § 45–1561—the anti-eviction section—"supersedes" the "tenancy at will" section, and that an owner by foreclosure may *not* evict a tenant at the owner's discretion. *See Valentine*, 490 A.2d at 1170.

**4.** Perhaps the anti-eviction law could be interpreted so as only to ensure that paying tenants keep the right to four walls and a roof. However, while this interpretation would be in the spirit of a policy to prevent persons from being thrown out of their residences entirely, it would not be in the spirit of the habitability regulations, which try to ensure that housing is of decent quality. *See, e.g.,* D.C.Mun.Regs. tit. 14,

§§ 400–599 (1986) (habitability and safety requirements).

**5.** *See Valentine*, 490 A.2d at 1170 n. 9.

**6.** *See id.* at 1172 (Tery, J., dissenting).

**7.** A final point against the VA is that the D.C. Housing Code does not place duties on "landlords" per se, but on "owners." *See* 5G DCRR § 1201 (1982) (now codified at D.C.Mun.Regs. tit. 14, § 500 (1986)). While of course an owner does not have an obligation to provide heat to trespassers, it does have an obligation to provide heat to those who are lawfully residing in the building. When an owner cannot evict a resident, *see Valentine*, 490 A.2d at 1170, it logically leads to the conclusion that the resident is considered to be a lawful resident.

include "government," defendant argues that the United States and its agencies are not bound by the D.C. Housing Code. Such a reading would make sense under a literal reading of the Housing Code, but would not make sense in any other way.

Neither plaintiff nor defendant cite any cases determining whether the federal government is bound by the D.C. Housing Code. However, it appears that District of Columbia law is. permitted to so bind the federal government, according to the terms of the Federal Tort Claims Act. *See* 28 U.S.C. § 2674 (the United States shall be liable for torts "to the same extent as a private individual under like circumstances"). Indeed, plaintiff argues that the federal law, on its own terms, binds the federal government to liability as any other "individual" under state law.

Moreover, the United States as landlord has been found to have obligations of safety as a building owner under common law. *See Klein v. District of Columbia,* 409 F.2d 164, 168 (D.C.Cir.1969). There is no reason to believe that the enactment of the broad D.C. housing regulations was meant to exclude the United States from obligations under law. In fact, it has been held that the protections of D.C. housing law are "part of a comprehensive legislative scheme to protect the rights of tenants and therefore must be construed liberally." *Valentine,* 490 A.2d at 1168 (referring to the anti-eviction law). Accordingly, the Court concludes that although the federal government was not listed among the numerous entities that are "persons" under the D.C. Housing Code, a sensible interpretation of the Code must impose on federal government owners the same obligations that are imposed on other owners of residential property in the District of Columbia.[8]

*Defendant's Negligence*

Once it is established that defendant had a duty to heat plaintiff's apartment, the Court must address the question whether defendant's failure to do so constitutes negligence *per se* and whether possible negligence on the part of plaintiff may block her recovery.

■ District of Columbia law on negligence *per se* and its relationship with contributory negligence is less than crystal clear. However, it is clear that violation of a *safety* regulation constitutes negligence *per se* toward those who are injured in the manner envisioned by the safety regulation. *E.g., Perkinson v. Gilbert/Robinson, Inc.,* 821 F.2d 686, 691–92 (D.C.Cir. 1987) (violation of a regulation requiring safe stairs); *Bowman v. Redding & Co.,* 449 F.2d 956, 964 (D.C.Cir.1971) (violation of a construction safety regulation); *Stevens v. Hall,* 391 A.2d 792, 795 (D.C.1978).

Although a housing code violation has never been used in a reported decision to establish negligence *per se* in the District of Columbia, the D.C. Court of Appeals has mentioned the possibility of such a finding. *See Scoggins v. Jude,* 419 A.2d 999, 1003 n. 5 (1980). In the instant case, the Court notes that one of the primary reasons for the heating regulation is safety. *See* 5G DCRR § 2101 (1982) (now codified at D.C. Mun.Regs. tit. 14, § 100 (1986)) ("inadequate heating" and "insufficient protection against fire hazards" listed as two of the reasons for the housing regulations). Without the provision of heat in an apartment, a resident in the District of Columbia would have to resort to potentially dangerous space heaters to keep warm during the winter months.[9] Continuous use of space heaters obviously greatly increases the chance of a fire. *See, e.g., Mayor and City Council of Baltimore v. Koons,* 270 Md. 231, 310 A.2d 813 (1973); *Louisville Board of Realtors v. City of Louisville,* 634 S.W.

---

8. Defendant has not raised, and the Court does not consider, the possibility that the District's anti-eviction law as applied to the United States unconstitutionally infringes on the federal policies of the VA's guarantee program. *See United States v. Little Lake Misere Land Co.,* 412 U.S. 580, 597–601, 93 S.Ct. 2389, 2399–2401, 37

L.Ed.2d 187 (1973) (holding inapplicable a state law that infringed too deeply on federal policy).

9. The average temperature in the District of Columbia is 36 degrees Fahrenheit in January and 45 degrees Fahrenheit in March. *See World Almanac* 746 (1984).

2d 163 (Ky.Ct.App.1982). Indeed, such a fire occurred in Ms. Valentine's apartment. Accordingly, the Court concludes that defendant's failure to provide heat to Ms. Valentine's apartment constituted a violation of a safety regulation and thus was negligence *per se.*

■ Defendant contends that its failure to provide heat in accordance with the housing regulation should not be considered negligence *per se*, but merely "evidence" of negligence. *See Whetzel v. Jess Fisher Management Co.*, 282 F.2d 943, 950 (D.C.Cir.1960) (refusing to apply a *per se* rule because of the possibility that plaintiff was negligent in remaining on premises—a possibility eliminated 20 years later by *Scoggins*, 419 A.2d at 1005 n. 6). Even if this were true, the Court would conclude in this case, where the essential facts are not disputed, that defendant's failure to provide heat was *conclusive* "evidence" of negligence.

■ Finally, defendant cannot avoid negligence *per se* by raising any of the traditional "excuses" that involve either a lack of opportunity or lack of fault on the part of the owner. *See Perkinson*, 821 F.2d at 692 n. 9 (citing the list in *Restatement (Second) of Torts* § 288A (1965)). Even though the VA apparently had a good faith belief that it did not owe a duty to Ms. Valentine, it clearly was aware that it was not providing her with heat. Indeed, a District of Columbia housing inspector notified the VA of the violations and ordered the VA to rectify the situation in January, 1983—more than a year before the fire in Ms. Valentine's apartment.

### Contributory Negligence

■ The last issue currently before the Court is whether plaintiff may be barred from recovery by possible contributory negligence. The District of Columbia adopts the "nearly universal rule" that the common-law defense of contributory negligence generally cannot be used to defeat the purpose of a safety regulation. *Perkinson*, 821 F.2d at 692.

However, the Court also agrees with the conclusion of the D.C. Court of Appeals in *Scoggins* that the finder of fact may consider excessive contributory negligence in certain situations, especially when there has been obvious negligence by defendant and when the plaintiff unreasonably increases the likelihood of injury by her actions. *See* 419 A.2d at 1005; *Restatement (Second) of Torts* § 482(2) (when both plaintiff and defendant are reckless, recovery is barred). A finding that plaintiff in the instant case acted recklessly, knowing as she did that the possibility of fire depended on her actions, should be a bar to recovery. Such a finding would serve the policy of discouraging contributorily reckless behavior and at the same time would not defeat the purpose of the housing regulation, because a landlord would be excused only in the unusual case in which the tenant acted recklessly with regard to the fire hazard.

Finally, the Court rejects plaintiff's argument that contributory negligence cannot be considered because the VA acted in willful or reckless disregard to her safety. *See, e.g., Sinai v. Polinger Co.*, 498 A.2d 520, 525 n. 7 (D.C.1985) (contributory negligence no bar when defendant acts recklessly); *Restatement (Second) of Torts* § 481, 482, 473 (1965) (similar standards). This doctrine, like the doctrine of punitive damages, focuses on the state of mind of the tortfeasor, and provides an added disincentive to reckless or willful behavior. In the instant case, however, although the VA intended to refuse heat to Ms. Valentine's apartment, it apparently did so in a "good faith" belief that it had no duty to provide such heat. In sum, the Court concludes that barring the defense of contributory negligence in this case because of the VA's "willful" refusal to provide heat is unjustified and would not serve public policy.

A final reason to permit an inquiry into contributory negligence is the type of the hazard involved in this case—fire—and the relative position of the parties to prevent the fire. Refusing to consider extreme contributory negligence in an apartment fire case would remove an additional and crucial incentive to protect against fire, a catastrophe that often affects persons oth-

er than the resident. Including the additional factor of extreme contributory negligence should ensure that residents act with due caution to others, as well as to themselves.

Accordingly, it is

ORDERED that defendant's motion for summary judgment is DENIED; it is further

ORDERED that plaintiff's motion for summary judgment is GRANTED to the extent that defendant is found to have owed a duty to plaintiff, to have been negligent, and that this negligence was the proximate cause of plaintiff's injury. The question of the possibility of reckless behavior on the part of the plaintiff remains a factor in the case. Defendant has the burden of proving reckless behavior on the part of the plaintiff. Plaintiff has the burden of proving the extent of damages.

The Court will contact counsel to set pre-trial and trial dates for this case.