Nellie M. PERKINSON, Appellant,
Ralph Hawks

v.

GILBERT/ROBINSON, INC., d/b/a
Houlihan's Old Place.
(Two Cases)

Nellie M. PERKINSON, et al.

v.

GILBERT/ROBINSON, INC., d/b/a
Houlihan's Old Place, Appellant.

Nos. 86–5048, 86–5248 and 86–5282.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 14, 1987.
Decided June 19, 1987.

Thomas W. Kirby III, Washington, D.C., was on the brief for appellant/cross-appellee, Nellie M. Perkinson.

Frank J. Martell *, Rockville, Md., was on the brief, for appellees/cross-appellants, Gilbert/Robinson, Inc., et al.

James C. Gregg and D'Ana E. Johnson, Rockville, Md., entered appearances for appellees/cross-appellants.

Before SILBERMAN, BUCKLEY and D. H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

This case presents two issues on appeal: whether an award of attorney's fees and costs as sanctions for a repeated pattern of discovery evasion constituted an abuse of the trial judge's discretion; and whether under District of Columbia law the trial judge should have instructed the jury that a violation of the D.C. Building Code was negligence per se and precluded the defense of contributory negligence. We affirm the district court as to its sanctions award, but reverse with respect to the jury instructions issue.

## I.

Plaintiff Nellie M. Perkinson, an elderly lady from Williamsburg, Virginia, was visiting Washington, D.C. with her family on Easter Sunday, April 22, 1984. After attending services at the National Cathedral, Mrs. Perkinson and her family traveled to Georgetown for lunch at Houlihan's Old Place Restaurant. Mrs. Perkinson and her party entered the restaurant at the street level and were directed up several wood surface steps to the upper level of the restaurant where they were seated for lunch. After lunch, as she attempted to walk down the steps, Mrs. Perkinson slipped and fell, severely fracturing her thigh. Despite surgery and physical therapy, Mrs. Perkinson remains substantially incapacitated by the accident.

After the restaurant disavowed responsibility for the accident, Mrs. Perkinson brought this diversity suit in federal district court, alleging that her fall had been caused by Houlihan's negligence, principally its failure to apply a "nonslip" surface to the wood steps as mandated by the District of Columbia Building Code, 12 D.C.M.R. § 603.5 (provisional ed. 1983). The restaurant denied any violation of the Building Code or any other negligence and alleged, in any event, that Mrs. Perkinson's fall resulted from her negligent inattention as she descended the steps and not from the condition of the premises.

What began as a simple "slip and fall" case, quickly became a protracted and contentious discovery war as defendant repeatedly obstructed plaintiff's efforts to prepare for trial. Defendant blocked the deposition of critical witnesses—ultimately prompting the district court to intervene and order the deponents produced with defendant paying certain travel costs as a sanction. Defendant also failed on several occasions to produce requested documents, most notably, Georgetown Houlihan's safety reports, which were on file at the headquarters of the restaurant's parent corporation, Gilbert/Robinson, Inc. At the trial, which began on February 19, 1985, a key defense witness, the restaurant's manager, John Mignona, contradicted his prior deposition testimony that the steps on which plaintiff fell did not have a nonslip surface. Mr. Mignona stated that the steps had actually been treated with a nonslip substance called "Glitsa." This testimony caught plaintiff by surprise because defendant had not supplemented Mignona's deposition testimony before trial as required by Fed.R.Civ.P. 26(e)(2). Nor had defendant produced the documents from the parent corporation's files, which Mignona relied upon, pertaining to the properties of "Glitsa," even though the documents were clearly within the ambit of plaintiff's discovery requests.

After the jury returned a verdict for the defendant, plaintiff moved for a new trial and sanctions based on defendant's consistent abuse of the discovery process. The court granted the motion for a new trial, finding that the defense counsel's miscon-

* Mr. Martell was not trial counsel.

duct was "highly prejudicial." In addition, the court concluded it had erred by not permitting plaintiff to prove that defendant violated District of Columbia safety regulations, and by failing to give any jury instructions on the subject. The trial judge admitted he had "put plaintiff's counsel off-guard by offering to take judicial notice of the regulations."[1] The court held plaintiff's motion for sanctions under advisement pending the new trial.

Despite having already been sternly penalized for discovery abuse and despite the pendency of plaintiff's motion for additional sanctions, defendant and defense counsel continued their misconduct during the supplemental discovery that took place prior to the second trial. Supervision of this discovery, along with the pending motion for sanctions, was referred to a magistrate. Soon after the court ordered a new trial, plaintiff moved to compel production of all discovery material that had been wrongly withheld, evidently in an effort both to unearth new evidence for the second trial and to reveal the extent of defendant's evasion of previous discovery requests. In response, defendant, *inter alia*, claimed that certain documents in Mr. Mignona's files had apparently been inadvertently destroyed after Mr. Mignona left the restaurant's employ.

To determine if the missing "Mignona File" had been destroyed before or after Mr. Mignona left, plaintiff sought to depose Mignona's replacement, Ms. Hoffman, the present general manager of Houlihan's Old Place. After informally agreeing to the deposition of Ms. Hoffman, defendant then refused to produce her because plaintiff's notice was untimely. With the second trial approaching in less than two weeks, the magistrate intervened and on August 7, 1985 ordered defendant to make Ms. Hoffman available by August 16, three days before the trial. The magistrate also ordered plaintiff to provide at least 24 hours notice of a scheduled deposition. On August 13th, six days later and one day after receiving plaintiff's notice of deposition, defendant's counsel notified the magistrate that Ms. Hoffman had gone on vacation and could not be located. The matter was referred to the trial judge, who issued an order on August 16 ruling that defendant was in contempt of court and assessing a civil contempt penalty of $5,000 a day for each day Ms. Hoffman failed to appear for deposition. Defendant managed to produce Ms. Hoffman for deposition the following day.[2] It later became apparent that Ms. Hoffman had still been in town when defendant had received plaintiff's notice and that when she was away on vacation, she was reachable at a telephone number she had left with the restaurant as required by company policy. Indeed, defendant restaurant's acting general manager had spoken with Ms. Hoffman while she was on vacation prior to defense counsel's representation to the trial judge that Ms. Hoffman's whereabouts were unknown.

The case went to trial the second time on August 20, 1985. Rejecting plaintiff's argument that a violation of the District of Columbia Building Code is negligence per se and that contributory negligence is not a defense to such a violation, the trial judge instructed the jury that a Building Code violation is merely evidence of negligence. He also instructed that if the plaintiff's negligence was a proximate cause of the accident, she could not recover. The jury returned a verdict for defendant.

After the trial, the court considered plaintiff's still pending motion for discovery sanctions, supplemented by her additional claim that defendant's misconduct now entitled her to a default judgment or, in the alternative, a third trial. Reviewing the record, the court found a number of serious violations of the Federal Rules and direct court orders. Specifically, the court found sanctionable: defense counsel's fail-

---

**1.** Despite plaintiff's reliance on the trial judge's offer, defendant argued that plaintiff waived her right to have the regulations considered by the jury because she failed to put them in evidence. The trial court firmly refused to condone what it termed "defendant's ambush tactics."

**2.** At the deposition, Ms. Hoffman, on advice of counsel, refused personal service of a trial subpoena; however, she subsequently did testify at the second trial.

ure to supplement Mignona's deposition testimony before either the first or second trials; defendant's destruction of documents in the "Mignona File" after they were subject to a discovery request; counsel's obstruction of Ms. Hoffman's deposition and refusal to accept personal service of a trial subpoena tendered by plaintiff at the deposition; and various misrepresentations to the court by defense counsel. After thoroughly canvassing this pattern of abuse, the court concluded defendant had not acted in good faith and ordered it to pay the plaintiff $42,085, which was the amount of plaintiff's costs, including attorney's fees accrued after September 24, 1984, the date on which defendant first erroneously responded to plaintiff's discovery requests by asserting, *inter alia,* that documents in the "Mignona File" did not exist. The court found that "most pre-first trial proceedings after [that date and . . . virtually all of the proceedings leading up to and culminating in the second trial were necessitated by defendant's and defense counsel's obstructive, uncooperative behavior." The court, however, rejected plaintiff's motion for a default judgment or a new trial, concluding that "two bites at the apple" is enough. In the court's view, respect for the historic function of the jury, the public policy of preferring the resolution of disputes on the merits, combined with the fact that the discovery abuses did not greatly prejudice plaintiff's presentation counseled against upsetting the second verdict. Moreover, as the court noted several times, "it is apparent from the two trials that there was more than enough evidence of contributory negligence as the proximate cause of the accident to justify the two verdicts."

Both parties appeal from the court's award of sanctions. Defendant challenges the award of any sanctions as an abuse of the court's discretion, and in the alternative suggests that the amount of the sanctions was excessive since it was based on actual, not reasonable, attorney's fees. Plaintiff, on the other hand, contends that the trial court should have gone further and ordered a default judgment or new trial as a sanction. In addition, plaintiff contends

the trial judge committed reversible error by failing to instruct properly on negligence per se and contributory negligence.

## II.

■ Our review of the sanctions award is limited by the district court's considerable discretion in such matters. *See Weisberg v. Webster,* 749 F.2d 864, 870 (D.C.Cir. 1984). As the Supreme Court noted in *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), the question for us is not whether we would have ordered the same sanctions but "whether the District Court abused its discretion in so doing." *Id.* at 642, 96 S.Ct. at 2780. We find no abuse of discretion here. The district court was entirely reasonable in concluding that defendant and defense counsel's repeated obstruction of the discovery process justified the monetary sanctions it ordered.

Defendant raises a number of specific objections to the district court's findings of misconduct. With respect to Mr. Mignona's contradictory testimony, defendant claims the court erred in attributing the actions of a former employee to the defendant and, in any event, failed to make a specific finding that defendant was aware of the possibility of inconsistent testimony. Neither argument has merit. The district court acted reasonably in charging Mignona's conduct to the defendant. Mignona was still employed by Gilbert/Robinson, the parent corporation of the restaurant, and presumably continued to identify with the restaurant's interest. Moreover, as the trial court noted, Houlihan's identified Mignona as its trial representative and requested the court's permission to have him sit at counsel table as corporate representative. The court also acted reasonably in finding that counsel was at minimum "grossly negligent" in failing to supplement Mignona's deposition before the second trial. Defendant does not point to any authority requiring the district court to make a specific finding that defendant was aware of the inconsistent testimony before ordering sanctions for violation of Rule 26(e). Our standard of review requires only that level

of specificity in the district court's findings and reasoning needed to determine if an abuse of discretion occurred. Based on the district court's opinion and the record below, we have no doubt that defendant's failure to amend Mignona's deposition could reasonably warrant sanctions. As plaintiff points out, defendant surely knew—indeed arguably was under a duty to know under Fed.R.Civ.P. 11—the substance of its key witness' testimony on the central issue in the case.

Defendant raises a similar objection to what it characterizes as the district court's failure to consider whether defense counsel made a reasonable inquiry to determine the existence of the "Mignona File" in response to plaintiff's discovery requests. Because the district court did not inquire into the reasons these key documents were not produced, defendant would have us hold that it is insulated from sanctions for destroying documents subject to a discovery request. But as the magistrate found—a finding quoted in the district court's opinion—"[d]efendant made no excuse nor offered any explanation for this failure to comply with discovery." The district court is surely not under any duty to search out possible explanations for defendant's apparent gross negligence when defendant itself offers none. The destruc-

tion of the "Mignona File" is plainly sanctionable.

Defendant also challenges the imposition of sanctions under Fed.R.Civ.P. 37(b) for what it characterizes as "the delay" in Ms. Hoffman's deposition and the obstruction of the service of the trial subpoena. Pointing to the exception in Rule 37(b)(2)(E) for situations where violation of the rule "was substantially justified or ... other circumstances make an award of expenses unjust," defendant suggests that because Ms. Hoffman ultimately did appear for deposition and trial, and because defendant has already been ordered to bear the costs for Ms. Hoffman's deposition, further sanctions are unjust. What defendant would have us overlook is that the basis for the court holding the Hoffman incident sanctionable was not the delay per se but defiance of court orders, which required a $5,000 per day civil contempt order, coupled with the deception of the trial court and opposing counsel. Under such circumstances, further sanctions for the defense counsel's handling of the Hoffman deposition are surely appropriate.[3]

█ Finally, defendant claims the district court erred in finding that defense counsel violated Rule 11 by making misrepresentations to the court.[4] In another case,

---

3. Defendant also contends that defense counsel's obstruction of plaintiff's attempt to serve Ms. Hoffman with a trial subpoena does not violate Rule 37(b) since that section applies only to depositions and discovery, not to trial subpoenas. Plaintiff apparently concedes this point: "the trial court's ... reference to the ... service of a trial subpoena was merely icing on the cake and was not essential to the Rule 37(b) finding." We agree that Rule 37(b) was clearly violated in a manner justifying the imposed sanctions even without regard to the obstruction of the subpoena.

4. The district court found deceptive defense counsel's characterization of the obstruction of plaintiff's attempt to serve Ms. Hoffman with a trial subpoena at her deposition. Defendant's August 29, 1985 Opposition stated:

Ms. Hoffmann [sic] appeared for her deposition on August 17, 1985. At that time, plaintiff attempted but failed to serve Ms. Hoffmann [sic] with a subpoena. Under the strict terms of the August 15, 1985 Order, then, she was free to leave the District of Columbia.

As the district court noted, "the fact is that Hoffman was not served with the trial subpoena *because* defense counsel explicitly instructed her 'not to accept the subpoena.'" (emphasis in original). Defense counsel gave these instructions despite the clear language of the August 15th Order, which stated that "if [Hoffman] is subpoenaed for trial purposes, she is not to depart the D.C. area until she has fulfilled her obligations under such a subpoena." The trial court found that defendant's description of the incident was incomplete and misleading.

The other mischaracterization related to the extent to which defendant had complied with plaintiff's discovery requests. In its September 10, 1985 opposition to plaintiff's motion for a default judgment and other sanctions, defendant asserted that plaintiff:

has been permitted to review and obtain copies of every document from every one of the fifty-seven Houlihan's restaurants, its parent company, its insurance company, and its attorneys, without regard to privilege, that was even tangentially related to the issues at this trial.

these misstatements might appear less egregious, but viewed in context, coming as they do at the end of a lengthy series of misdeeds (and made, paradoxically, in pleadings attempting to establish defendant's good faith), we cannot say the district court abused its discretion in finding the misrepresentations sanctionable. The district court did not award sanctions for any of counsel's abuses standing alone. It inferred willful misconduct and bad faith from the persistent pattern of abuse that pervaded every stage of the litigation. As we stated in *Weisberg v. Webster:*

> Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism.

749 F.2d at 872, (quoting *G–K Properties v. Redevelopment Agency,* 577 F.2d 645, 647 (9th Cir.1978)).[5] In light of defendant's callous disregard of court orders and the Federal Rules, the severe monetary sanctions ordered against it were certainly justified.[6]

■ Plaintiff attacks the sanctions award from the other direction, asking us to hold that the trial judge abused his

discretion by not entering a default judgment or ordering a new trial. The trial judge concluded that despite the numerous discovery abuses, "the record demonstrates that the jury was able to reach a fair determination on the merits in the second trial." And even with respect to the "most troubling" abuse, the destruction of the "Mignona File," the court found there was "substantial uncertainty as to whether the documents were lost through inadvertence or because of actions taken in bad faith." Based on the record below and in light of the considerable discretion afforded the trial court in these matters, we cannot say that the defendant's misconduct was so egregious or prejudicial to plaintiff as to *require* the ultimate sanction—entry of a default judgment.[7] Because we hold below that a new trial is required on other grounds, we need not decide plaintiff's alternative claim that the district court abused its discretion in not ordering a new trial solely because of the discovery abuses.

## III.

■ Plaintiff argues that the trial judge erred in his instructions to the jury on the central issues in the case: negligence and contributory negligence. We agree. It is

---

Because the statement completely disregards the missing "Mignona File," which was directly related to the central issue of negligence, the district court found it to be a serious and sanctionable mischaracterization.

5. It may well be increasingly difficult for district judges to control discovery practices. *See generally* R. Adler, Reckless Disregard (1986).

6. Defendant challenges the district court's failure to make a finding as to the reasonableness of the attorney's fees awarded to plaintiff. There is no merit to this argument. Plaintiff filed extensive documentation of her attorney's fees and costs with the district court; her original request totaled $71,202. The reasonableness of plaintiff counsel's billing rate was contested by defendant, as was the propriety of various specific expenses. The district court's March 3, 1986 opinion carefully considered defendant's objections and adjusted the fee request downward so as to make it "reasonably attributable" to defendant's violations of the Federal Rules

and orders of the court and magistrate. The final award of $42,085 clearly reflects a number of determinations as to the reasonableness of the fees. In any event, even if the award overcompensated plaintiff for unnecessary expenses caused by defendant, it could still have been justified for punitive and deterrent purposes. *See Hamilton v. Ford Motor Co.,* 636 F.2d 745, 747 (D.C.Cir.1980) ("Principal purpose of Rule 37(b) is punitive, not compensatory").

7. In light of the uncertainty surrounding the destruction of the "Mignona File," we also affirm the district court's conclusion that defendant's conduct with respect to the "File" did not, in the alternative, justify an adverse inference instruction directing the jury to find defendant negligent. Acting within its discretion, the court declined to give such an instruction, finding that plaintiff's "exhaustive discovery" had produced ample evidence of defendant's negligence, such that the unavailability of the "Mignona File"—the contents of which were unknown—did not clearly affect the outcome.

the settled law of the District of Columbia that:

"[W]here a particular statutory or regulatory standard is enacted to protect persons in plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, *unexplained* violation of that standard renders the defendant negligent as a matter of law." If a party charged with statutory or regulatory negligence produces competent evidence tending to explain or excuse his or her violation of the statutory or regulatory standard, the jury is properly instructed, upon proper request of the party, that the violation is evidence of negligence, but not negligence as a matter of law.

*Ceco Corp. v. Coleman*, 441 A.2d 940, 945 (D.C.App.1982) (quoting *Richardson v. Gregory*, 281 F.2d 626, 629 (D.C.Cir.1960)) (citations omitted) (emphasis provided by the *Ceco* court). *See generally* W. Keaton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts 36 (5th ed. 1984). In this case, the District of Columbia Building Code requires that steps in places of public assembly have a "nonslip" surface. 12 D.C.M.R. § 603.5. That requirement is clearly intended to prevent precisely the type of accident suffered by Mrs. Perkinson—slipping on stairs.[8] Under *Ceco*, then, a violation of the Building Code is negligence per se unless defendant proffers "competent evidence tending to explain or excuse" the violation. *Ceco*, 441 A.2d at 945. Defendant offered no such evidence but asserts that its denial that a violation occurred at all should be considered an explanation or excuse for the alleged violation. We find that argument, to say the least, labored. Because an ex-

cuse or explanation can only arise if a violation did occur, a denial is obviously not the sort of "explanation" that *Ceco* envisioned.[9] Nevertheless, the trial judge instructed the jury that a violation of the Building Code was only evidence of negligence. This was error.

■ The trial judge also erred by instructing the jury that plaintiff could not recover if she was contributorily negligent. Again, District of Columbia law is well established on this point. In *Martin v. George Hyman Const. Co.*, the D.C. Court of Appeals reaffirmed its adherence to the "nearly universal rule" that the defense of contributory negligence may not defeat the purpose of a statute or regulation. 395 A.2d 63, 68–69 (D.C.App.1978). Not all statutes and regulations, however, are intended to supersede common law defenses. For instance, *Martin* explains that where a statutorily imposed duty of care does not increase the protection due the protected class, but merely shifts a common law burden from one person to another, the defense of contributory negligence is not affected. *See, e.g., Dougherty v. Chas. H. Tompkins Co.*, 240 F.2d 34, 35 (D.C.Cir. 1957) (ordinance requiring a party who temporarily blocks a sidewalk to shoulder the city's common law duty to maintain the sidewalk in good repair). Another example would be regulations that serve only "to clarify and define the elements of due care." *See Bowman v. Redding & Co., Inc.*, 449 F.2d 956, 966 (D.C.Cir.1971) (discussing traffic regulations). But where a statutory scheme was intended to mitigate a risk that may flow from foreseeable carelessness, allowing the defense of contributory negligence would frustrate legisla-

---

8. Defendant does not dispute that the statutory standard was enacted to protect persons in Mrs. Perkinson's position.

9. *Ceco* follows the approach taken in the Restatement (Second) of Torts (1965). The Restatement recognizes five categories of excuses that would remove a violation of a statute from the realm of negligence per se:
    (a) the violation is reasonable because of the actor's incapacity;
    (b) he neither knows nor should know of the occasion for compliance;

(c) he is unable after reasonable diligence or care to comply;
(d) he is confronted by an emergency not due to his own misconduct;
(e) compliance would involve a greater risk of harm to the actor or to others.
Restatement (Second) of Torts § 288A (1965). A party could, of course, deny that a violation occurred and also claim in the alternative that any violation that did occur was nevertheless excused. Defendant did not do so.

tive purpose.[10] *Martin,* 395 A.2d at 69–70. As we have noted, defendant does not deny that the statute was designed to protect persons in plaintiff's position. Like the workplace safety statute held in *Martin* to preclude the defense of contributory negligence, the Building Code plainly reflects an intent to mandate a greater duty of care than that imposed by the common law. *See id.* at 69–71. *See also Ceco,* 441 A.2d at 945 n. 2. Accordingly, by giving the standard contributory negligence instruction, the trial judge misrepresented the law. As the district court itself recognized, the jury could very easily have based its verdict on contributory negligence; thus the improper jury instructions clearly constitute reversible error. *See e.g., Young v. Up-Right Scaffolds, Inc.,* 637 F.2d 810, 814–15 (D.C.Cir.1980).

Defendant's principal response to the district court's erroneous instructions on negligence per se and contributory negligence is to argue that plaintiff failed to preserve her appeal on these issues by not complying with the requirements of Fed.R.Civ.P. 51, which obligates a party objecting to a jury instruction to state her objection before the jury retires.[11] Plaintiff's attorney did object to the instructions at trial, Second Trial Tr. 239, but that did not suffice according to defendant because counsel failed to state distinctly the reason for his objection. This circuit has squarely rejected the interpretation of Rule 51 urged by defendant. Our rule is that "in order to preserve for appeal an objection to a jury instruction ... it is not necessary for a party to except or object 'if the party's position has previously been clearly made to the court and it is plain that a further objection would be unavailing.'" *Stewart v. Ford Motor Co.,* 553 F.2d 130, 140 (D.C.

Cir.1977) (quoting 9 C. Wright & A. Miller, Federal Practice and Procedure § 2553, at 639–40 (1971)). This view harmonizes the command of Rule 51 with the more flexible general standards of Fed.R.Civ.P. 46[12] and recognizes that requiring counsel to engage in reiterative insistence does not serve the purposes of Rule 51 and may in fact impair justice by lengthening the time between the close of evidence and the time the jury begins deliberating.

■ The record establishes that plaintiff distinctly stated the grounds of her objection to the instructions on several occasions. A full discussion of *Ceco* and *Martin,* as well as a specific request for a per se instruction and objection to a standard contributory negligence instruction, was included in plaintiff's trial brief. *See* August 1, 1986 Pretrial Brief 28–30. At the August 9, 1985 pretrial conference, the trial judge informed the parties that he had decided to reject plaintiff's request for a per se instruction. When plaintiff's counsel asked, "I don't want to try the court's patience, but could I be heard for 30 seconds on that point," the court replied, "I have heard all I need to know about it." August 9, 1985 Pretrial Conference Tr. at 70. Counsel then managed to explain briefly his objection to a contributory negligence instruction, to which the judge responded that he had "meant to rule on that, too," and announced he would give the standard instruction. Under these circumstances, the failure of plaintiff to reiterate the reasons for her objections before the jury retired did not constitute a waiver of her right to appeal. As in *Stewart,* it is plain from the record below that the court's pretrial conference denial "represented the trial judge's final opinion that these two

**10.** The unavailability of the defense of contributory negligence does not, however, mean that recovery would be permitted in the face of gross negligence or recklessness. *Martin,* 395 A.2d at 71.

**11.** As all parties now agree—after an initial period of confusion—the failure to preserve an issue on appeal in federal courts is a procedural matter governed by federal law. *See Stewart v. Ford Motor Co.,* 553 F.2d 130, 139 n. 9 (D.C.Cir. 1977).

**12.** Rule 46 states:

Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor....

instructions should not be given and that further objection by plaintiff[ ] would have been not only unavailing but wasteful of the court's time." *Stewart,* 553 F.2d at 140. "To hold that [plaintiff is] now precluded from complaining of the trial court's refusal to give these instructions would be an unnecessary elevation of form over substance." *Id.*

For the reasons stated in this opinion, the jury verdict of August 21, 1985 is vacated and the case is remanded to the district court. The district court's award of sanctions is affirmed.

*Affirmed in part and reversed and remanded in part.*