995 F.2d 305
 301 U.S.App.D.C. 405
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
John C. MILLER, Appellant,
v.
HILTON HOTELS CORPORATION, Appellee.
 No. 92-7053.
 United States Court of Appeals, District of Columbia Circuit.
 June 1, 1993.
 
 Before: WALD, HENDERSON and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on appeal from the judgment of the District Court, and it was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that in No. 92-7053, the judgment is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely-filed petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 In this appeal, John Miller argues that the district court abused its discretion in concluding, after a first trial on a slip and fall action against Hilton Hotels Corporation ("Hilton") in which the jury awarded Miller $350,000, that he should either accept a remitted award of $100,000 or proceed to a new trial. Having opted for the second trial and lost, Miller further raises sundry complaints regarding the district court's conduct of the second trial. For the reasons explained below, we affirm the judgment of the district court.
 
 I. BACKGROUND
 
 5
 On July 8, 1985, Miller slipped from a portable stair as he was descending from a speaker's platform in the West Ballroom of the Washington Hilton Hotel in Washington, D.C. He was diagnosed as having a hairline fracture of the right fibula and his leg was placed in a cast. Several days later, Miller developed a pulmonary embolism (blood clot), and filed a complaint in the district court against Hilton alleging negligence and permanent vascular damage to his legs resulting from the embolism. After the first trial, the jury returned a verdict for Miller and awarded him $350,000. The district court granted Hilton's post-trial motion for remittitur or new trial, opining that the jury award appeared excessive and that procedural errors may have infected the outcome of the trial. Miller opted for a second trial and his motions to limit the new trial to the issue of damages and to have the district judge rescue himself were denied.
 
 
 6
 Prior to the second trial, the district court granted Hilton's motion for sanctions against Miller in the amount of $3,000 for violating the court's discovery order, secreting medical records adverse to his case, and making efforts to induce expert witnesses to color their testimony and/or secret documents. The court rejected Miller's request to sanction Hilton for allegedly improperly contacting ex parte several of the physicians retained by Miller. After the trial, the jury returned a verdict in favor of Hilton. Miller appeals, asserting that the district court: (1) abused its discretion by remitting $250,000 of the jury's award and erred in refusing to limit the second trial to damages; (2) erred in denying his motion for sanctions and granting Hilton's motion for sanctions; (3) abused its discretion in determining the admissibility of certain evidence; and (4) erred in refusing to give the jury an instruction on construction standards. Miller asks this court to reinstate the verdict from the first trial, or alternatively, grant another new trial.
 
 II. ANALYSIS
 A. Remittitur/New Trial Option
 
 7
 The district court explained that the $350,000 verdict was, in light of the $7,000 in medical expenses and Miller's apparent recovery from his injury, excessive because it "shock[ed] the conscience of the Court, and it had to result from some type of mistake or consideration of improper elements or passion or prejudice by the jury that was improper." More specifically, the district court concluded that this was "a case of a broken ankle of an active lawyer who plays tennis, jogs, and does other physical activities today, has no residuals directly from the ankle orthopedically that are in any nature inhibiting his activities, except he has a complication that developed of a pulmonary [embolism] that was related by a physician to his ankle injury and that the physician testified could occur." "The trial judge's view that a verdict is outside the proper range deserves considerable deference ... [and will be reversed] only where the quantum of damages found by the jury was clearly within the maximum limit of a reasonable range." Taylor v. Washington Terminal Co., 409 F.2d 145, 149 (D.C.Cir.) (emphasis in original) (internal quotation omitted), cert. denied, 396 U.S. 835 (1969). We cannot say that the damages in this case were clearly within a reasonable range, and therefore conclude that the district court did not abuse its discretion in remitting $250,000 of the award. See Jeffries v. Potomac Development Corp., 822 F.2d 87, 95-96 (D.C.Cir.1987).
 
 
 8
 The district court did not stop there, however. It also granted Hilton's motion for a new trial on both liability and damages, explaining that it might have inappropriately admitted evidence of other unrelated and dissimilar injuries at the hotel. Further, the district court noted that "the jury may have been confused by the instruction regarding the proper legal effect of the various Building Codes and industry standards on stair safety." Citing Ouachita National Bank v. Tosco Corp., 686 F.2d 1291, 1299 (8th Cir.1982), the district court reasoned that it could not limit the new trial to the issue of damages, because " 'where the questions of liability and damages are so interwoven that they cannot be submitted independently without confusion or uncertainty, a partial new trial is inappropriate.' " Finally, after the second trial, the district court entered findings of fact that Miller had "attempted to unethically and improperly withhold evidence and manufacture medical evidence in order to cause the aberrant result in the first trial." This misconduct was cited as an additional, sufficient ground for granting the second trial.
 
 
 9
 While we are confident that the district court did not abuse its discretion in granting Hilton's motion for a second trial, see Weil v. Seltzer, 873 F.2d 1453, 1457 (D.C.Cir.1989), we are less certain that the choice posed to Miller of either a remitted award (on the ground that the jury properly found liability but granted an excessive award) or a new trial (on the ground that the jury may have incorrectly found liability) was appropriate. As one treatise explains, where it "appears that the jury erred or abused its discretion not only on the issue of damages, but also on the issue of liability, the trial court must unconditionally order a new trial and cannot give the plaintiff the option to accept a lesser amount." 6A MOORE'S FEDERAL PRACTICE § 59.08 at 59-198 (1993) (emphasis in original) (footnotes omitted); cf. Hutchinson v. Stuckey, 952 F.2d 1418, 1423 & n. 5 (D.C.Cir.1992) (remanding for district court to offer new trial on damages or remittitur); Faison v. Nationwide Mortgage Corp., 839 F.2d 680, 693-94 (D.C.Cir.1987), cert. denied, 488 U.S. 823 (1988). However, given the fact that Miller opted for the second trial, the offer of remittitur, even if inappropriate, was utterly harmless.
 
 B. Sanctions
 
 10
 Miller next argues that the district court abused its discretion in refusing to impose sanctions on Hilton's counsel for improper contacts with three physicians who were allegedly retained by Miller for purposes of the litigation. Defendants are precluded by Rule 26(b)(4) of the Federal Rules of Civil Procedure from conducting ex parte interviews with those physicians who have agreed to serve as experts, but may contact those physicians who are retained partly or wholly for treatment purposes. See Street v. Hedgepath, 607 A.2d 1238, 1246-47 (D.C.App.1992). With regard to two of the physicians, Drs. Rhodes and Byrne, the district court explained that "the plaintiff had listed Dr. Rhodes and Dr. Byrne as expert witnesses, apparently without the physicians' consent." Since these doctors never agreed to act as experts on behalf of Miller, they were properly contacted by Hilton.
 
 
 11
 As for the third physician, Dr. Bloom, Miller does not assert that Hilton engaged in any improper ex parte contacts but only that Hilton "violated the discovery rule by subpoening [sic] Dr. Bloom's report without moving to compel its production by the court." Appellant's Reply Brief at 8. Although Dr. Bloom was originally retained as an expert, Miller did not disclose this fact, as required by the district court's discovery order. The order instructed Miller to produce "copies of all special damages information (i.e., bills, medical reports, lost wages, etc.) and other reports related to the accident, that would be normally discoverable. Plaintiff shall identify those items withheld, and the basis for withholding them." Miller conceded below that he did not disclose that Dr. Bloom had been retained as an expert and had produced a medical report, let alone explain why he was withholding the report from Hilton. The identity of an expert is generally not protected by Rule 26(b)(4)(B). See 8 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2032 (1970 & Supp.1993). We therefore conclude that Miller's failure to reveal to Hilton that Dr. Bloom was an expert on behalf of Miller, in violation of the district court's discovery order, precludes him from asserting now that Dr. Bloom was retained as an expert and that Hilton violated the discovery rules by requesting the doctor's records.
 
 
 12
 We further find that the district court did not abuse its discretion in assessing a $3,000 sanction against Miller personally. The district court explained that the sanctions were justified, inter alia, by Miller's
 
 
 13
 attempting not to answer certain questions about certain reports that Dr. Cooper had the knowledge of because it could affect his recovery in this case and other such matters as are evident, including the naming of those people as experts when they had not yet retained or consulted with the experts.
 
 
 14
 We find that the district court did not abuse its discretion in deciding that these actions, which are well-supported by the record, justified the penalty that was imposed on Miller. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990); Perkinson v. Gilbert/Robinson, Inc., 821 F.2d 686, 689 (D.C.Cir.1987).
 
 C. Admission of Evidence
 
 15
 Miller next complains that the district court erred in admitting into evidence, under the exception to the hearsay prohibition in Rule 801(d)(2)(A) of the Federal Rules of Evidence for admissions by a party-opponent, two letters written by Miller to his expert Dr. Cooper and one letter from Miller to Dr. Byrne. In these letters, Miller suggested additions to the doctors' reports, expressed reservations about assorted findings and encouraged the doctors to place greater or lesser weight on various examination results. The district court enjoys broad discretion in admitting evidence and will only be reversed for a clear abuse of discretion. See Weil, 873 F.2d at 1464. Miller's only objection to admission of the letters is that the evidence was unduly prejudicial because it suggested that he had unethically attempted to manufacture evidence. Appellant's Brief at 27. However, at the same time, Miller argues that on the face of the letters it is plain that he was simply seeking clarification of the doctors' opinions and expressing his observations regarding their findings. Id. at 26-27. We do not think the district court abused its discretion in determining that the letters evidenced Miller's concern with the medical evidence supporting his claim, but did not improperly inflame the jury; in other words, that the probative value of the letters outweighed their potential prejudice. We believe Miller is correct to the extent he argues that the letters do not demonstrate that he was inappropriately attempting to pressure the doctors to manufacture evidence.
 
 
 16
 Miller also argues that the district court wrongly excluded a National Institute of Health Consensus Development Conference Statement entitled "Prevention of Venous Thrombosis and Pulmonary Embolism." The district court engaged in a colloquy with counsel and questioned whether Miller's counsel could establish the relevancy of the report. Miller stated only that the report identified the number of people who died each year from embolisms and the variety of risk factors that existed. The district court found this proffer insufficient because it "doesn't predict within terms of reasonable medical probabilities that he's going to die as a result of an embolism in the future." Further, the district court explained that because the report contained a great deal of irrelevant information on other conditions, it would be more appropriate for Miller simply to pose questions about risk factors to the expert witness Dr. Cooper. This resolution of the evidentiary dispute was well within the district court's broad discretion over the admission of evidence.
 
 D. Instructions on Building Standards
 
 17
 At the first trial the district court instructed the jury: "[A]t the time that the incident under consideration occurred, certain building code regulations and standards governing construction of stairs were accepted in the industry. You are instructed that the violation of such regulations or standards, if the violation is a cause of a plaintiff's injuries, may be evidence of negligence to be considered by you." In granting Hilton's motion for a new trial, the district court acknowledged that it should not have left the issue of the applicability of building codes to the jury, but should have resolved the issue first as a matter of law. Therefore, at the second trial, the district court requested briefing and engaged in a lengthy colloquy with counsel on the applicability of the D.C. Building Code and the Building Officials and Code Administrators (BOCA) Building Code. The district court found that neither authority applied, and specifically, that it could not conclude "that the plaintiffs have shown by a preponderance of the evidence as a matter of law that the D.C. Building Code applies to th[is] type of three-step portable steps ... that are picked up and moved around from place to place." It therefore gave the following instruction to the jury:
 
 
 18
 [Y]ou have heard from the expert witnesses of both the plaintiff and defendant regarding the applicability of certain building codes to the portable stairs at issue in this case. You are instructed as a matter of law that neither the BOCA Building Code nor the D.C. Building Code applies as enforceable and binding law with respect to the portable stairs involved in this case.
 
 
 19
 You are not to consider the D.C. Building Code or any testimony about it as evidence in this case. Again, any references made to the D.C. Building Code should be disregarded by you. You may consider testimony about the BOCA Code as one of the sources of information relied upon by the experts for their opinions about the safety of the stairs in question.
 
 
 20
 Miller now argues that the district court incorrectly concluded that the D.C. Building Code was inapplicable. We agree with the district court that Miller failed to carry his burden of proving that provisions of the code applied to the portable risers. See Lewis v. WMATA, 463 A.2d 666, 674 (D.C.1983). The court observed that the section of the D.C. Building Code relied upon by Miller's expert appeared to govern only permanently constructed stairways as opposed to portable stairways. In addition, it noted that Hilton's expert had confirmed this view. Finally, the district court stated that
 
 
 21
 [t]here was no testimony brought to the Court that D.C. building inspectors considered the building code covered these stairs, and ... if you analyze the building code that's been provided to me and the type of stairs they talk about and look at the type of stairs that we have here and the experts' testimony, it's clear to the Court they are not considered as stairs under the D.C. Code provision.
 
 
 22
 Miller was unable to cite to the district court any other evidence that D.C. Building Code provisions applied to the portable risers, and therefore we cannot say that the district court's instruction was erroneous.
 
 
 23
 For the foregoing reasons, the judgment of the district court is
 
 
 24
 Affirmed.